PORT JERVIS, M. & N. T. R. Co. *v.* NEW YORK, L. E. & W. R. Co.

*(Supreme Court, General Term, Second Department.* May 12, 1890.)

SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—CERTAINTY.

A verbal agreement was entered into by the M. and the E. railroad companies by which a junction was to be made at a certain point, and the E. company agreed to furnish rolling stock for the operation of the M. company at a certain sum per mile. The M. company was afterwards reorganized, when it made an arrangement with the E. company by which certain charges were to be made by the E. company for the use of its turn-table and cars, but until further notice no charge was to be made for terminal facilities. Charges were afterwards made for terminal facilities, but were not enforced. Finally the E. company refused to allow the M. company to use its property any longer. *Held*, that the agreement under which the M. company was allowed to use the terminal facilities of the E. company without charge was too indefinite to be enforced in equity.

Appeal from special term, Orange county.

Action by the Port Jervis, Monticello & New York Railroad Company against the New York, Lake Erie & Western Railroad Company to recover damages for breaking the connection between the roads of these parties at

Port Jervis, N. Y., and to obtain a perpetual injunction requiring the defendant to restore the connection, and restraining further interference therewith. Plaintiff owns and operates a railroad from Monticello, in the county of Sullivan, through the town of Thompson, in which Monticello is situated, and the towns of Forestburgh and Deer Park, connecting with defendant's road at Port Jervis, in the county of Orange, nearly due south from Monticello, 23 miles distant.   This road was constructed and the intersection with defendant's road established during the years 1869 to 1872 by a corporation under the name of the Monticello & Port Jervis Railway Company.   At that time the defendant's road was owned and operated by a corporation under the name of the Erie Railway Company.   At the same time the New York & Oswego Midland Railroad Company was engaged in constructing its road from New York to Oswego, running five miles north from Monticello.   At Port Jervis plaintiff's track was connected with that of the Erie Railway on the premises of the latter company.   When the road was completed an arrangement was made with the Erie Company to operate it with the rolling stock of the Erie for a certain sum per mile.   The intersection of the Monticello track with the Erie was nearly half a mile from the passenger and freight stations at Port Jervis, and fully that distance from the turn-table. That was in the Erie yard at Port Jervis.   The trains on the Monticello road made use of the Erie tracks from the junction to the turn-table, and the engines were there turned.   The arrangement of the Erie to operate the Monticello road with its rolling-stock at 90 cents per mile continued from its completion, early in 1871, to 1875, when the Monticello road was sold under the foreclosure of a mortgage upon it.   The company was reorganized under the name of the Port Jervis & Monticello Railroad Company, and that company continued to operate and own it until November, 1886.   In May, 1875, the Erie Railway passed into the hands of Mr. Jewett, as receiver, appointed in proceedings for the foreclosure of certain mortgages upon the road and other property of that company.   In 1878, that property was sold in such foreclosure proceedings, and the present defendant was organized, and took the title, which it has since retained.   The Port Jervis & Monticello Company operated its road, furnishing its own rolling stock, and an arrangement was made between it and Mr. Jewett, the receiver of the Erie, by which certain charges were made for the use of the turn-table and cars, but, until further notice, no charge was to be made for the use of terminal facilities at Port Jervis otherwise than as specified in the arrangement.   With the organization of the present defendant, and taking possession of the Erie Railway, a charge of $50 per month for the use of terminal facilities was made by the defendant.   Its payment was not enforced because of the inability of the Monticello Company to pay.   From 1875 the Monticello Company used the tracks and yard of the Erie at Port Jervis for the passage and storage of its trains, the turn-table for turning its engines, the passenger station for its passengers, the sale of its tickets, and the checking and handling of its baggage, and the freight station for receiving, handling, and delivering of its freight.   It paid certain ones of the agents of the Erie amounts monthly aggregating more than $50.   In November, 1886, the Monticello road was sold in sequestration proceedings.   The present plaintiff was organized, not only for the purpose of operating a railroad from Port Jervis to Monticello, but also to build an extension of that road to intersect with the New York, Ontario & Western Railroad, a competing line of the defendant.   The purchasers of the Monticello road conveyed it to the plaintiff.   The plaintiff then entered into an agreement with the defendant for the use of the terminal facilities theretofore enjoyed by the Monticello Company for $100 per month, such payment to cover services of agents.   It paid that charge from November, 1886, to March 1, 1888.   In the latter part of 1887 the plaintiff made arrangements for building an extension of its road to the Ontario & Western, and when the

·defendant was advised that it was the purpose of the plaintiff to bring a competing road upon its tracks, and into its station at Port Jervis, it insisted that the terminal facilities at that place should be paid for at their value, which it fixed at $300 per month, commencing March 1, 1888. The plaintiff paid that ·charge for March, 1888, and then ceased paying anything. No further payments having been made after March, on May 22, 1888, the plaintiff was no- ·tified that the privilege of using the defendant's property at Port Jervis would be withdrawn after June 1st. By subsequent arrangements the use was con- ·tinued to June 21, 1888, when the connection was severed. This action was ·then commenced, and July 21st a temporary injunction was granted, under which the connection was restored and continued until the trial of this action ·and the entry of final judgment. The case was tried before Justice J. F. BARNARD. The plaintiff claimed that it had vested, permanent, and inalien- ·able right to use the defendant's property without compensation, and based such claim on certain conversations between two of the directors of the original Monticello Company and Fisk and Gould, at the time president and vice-president of the Erie Railway Company. It is conceded that no written instrument existed giving any such right, and it was uncontroverted that no action was ever taken by the directors of either company claiming or granting such right. The trial justice found as a fact that no such right existed as the plaintiff asserted. He, however, stayed all proceedings of the defendant on the decision for 60 days, to give the plaintiff opportunity to move for a commission to fix the terms on which the plaintiff might connect its road with that of the defendant under the statute in such cases. The plaintiff did not avail itself of the privilege thus given, and after the expiration of the 60 days judgment was entered dismissing the complaint on the merits. From that judgment the plaintiff appealed, and the case is now here for review. It is contended by the defendant that the judgment appealed from is right; that the decision of the trial court was correct on the facts; and that, in any view that can be taken of the testimony, the claim of the plaintiff cannot be sustained as a matter of law.

*T. F. Bush,* for appellant. *L. E. Carr,* for respondent.

PRATT, J. The testimony at the trial was to some·extent conflicting, but the decision made was abundantly sustained by proof; nor can we say that there is any preponderance of proof in favor of the appellant. On the contrary, we are of opinion that, if the utmost credit be given to the testimony introduced by plaintiff, it does not show an agreement that equity can enforce; for, if it be conceded that an understanding was reached that terminal facilities should be accorded without charge, we do not find that any time was specified during which that arrangement should continue. Other arrangements were also made, and the Erie might claim, with much show of fairness, that the continuance of the terminal facilities without charge was ·to be limited to the duration of the other portions of the agreement. Where ·so much is uncertain, a court of equity has not the means of establishing, with adequate precision, what were the terms and conditions of the agreement, if it be that one was definitely made. We must therefore affirm the judgment.